```
                    UNITED STATES DISTRICT COURT

                    EASTERN DISTRICT OF LOUISIANA


IRVING J. HENRY and                               CIVIL ACTION
JENNIFER HENRY, III


v.                                                NO. 07-1738


ALLSTATE INSURANCE COMPANY                        SECTION "F"
```

ORDER AND REASONS

Before the Court is Allstate's motion to strike class allegations, motion to dismiss, and motion for costs and a stay. For the reasons that follow, the motion to strike the class allegations is GRANTED, the motion to dismiss is GRANTED in part and DENIED in part, and the request for costs and a stay is GRANTED in part and DENIED in part.

Background

After Hurricanes Katrina and Rita, Irvin and Jennifer Henry filed a claim with Allstate, their insurer. Allstate inspected the Henrys' property on October 30, 2005, which resulted in payments of $13,550.73 and $4,865.43 on October 30, 2005 and May 15, 2006 for their dwelling, additional living expenses and contents. On August 7, 2006, the Henrys provided Allstate with a proof of loss and engineering report showing that their dwelling suffered wind damage in the amount of $112,743.96.

On December 21, 2006, the Henrys sued Allstate to collect their insurance proceeds, as well as purporting to represent all Allstate insureds in Louisiana that suffered property damage from Hurricanes Katrina and Rita. This first suit, Civil Action Number 06-11217 ("Henry I"), was allotted to this Court. However, the Henrys were also named plaintiffs in another suit, Civil Action Number 06-7375, pending in Section L. The Court denied the Henrys' motion to transfer to Section L. After that, Judge Fallon severed the claims of the several dozen named plaintiffs proceeding in Civil Action Number 06-7375 in Section L. The Henrys then voluntarily dismissed Henry I (the suit in this Section), and filed an "amended petition," which was randomly assigned to Judge Barbier ("Henry II"). Allstate's motion to transfer Henry II to this Court as a related case pursuant to Local Rule 3.1.1E was granted over the Henrys' objection.

Accordingly, Henrys' Amended Petition for Damages, filed on April 12, 2007, was transferred to this Court on May 30, 2007. Count I, their individual damage claim, alleges that "Allstate has yet to engage in adequate loss adjustment" and therefore has violated La.R.S. 22:658 and La.R.S. 22:1220. The Henrys allege that Allstate arbitrarily and capriciously breached its duty to promptly and fairly adjust their claims in good faith, and ultimately underpaid their claim.

In Count II, the Henrys propose to represent a class defined

2

as "all holders of homeowner's policies issued by Allstate Insurance Company, or any of its subsidiaries, for property located in the State of Louisiana who suffered damages as a result of Hurricanes Katrina and Rita."  The Henrys' proposed class claims allege that when Allstate adjusted the claims of all members of the proposed class, Allstate used a software package named "IntegriClaim."[1]  By using the IntegriClaim software,[2] Allstate breached their contracts with the class, it is urged, in violation of La. Rev. Stat. § 22:658, in a manner sufficient to demonstrate lack of good faith pursuant to La. Rev. Stat. § 22:1220, and in a manner sufficient to demonstrate fraud pursuant to La. Civ. Code art. 1953.

Allstate now moves to strike the class allegation under Fed. R. Civ. P. 23(d)(4), arguing that the plaintiffs' lawsuit necessarily requires a claim-by-claim inquiry for each member of the proposed class to determine "the nature and extent of damage,

---

[1] According to the Amended Petition, IntegriClaim price list is composed of individual repair actions, broken down into different categories, with each of these repair actions having a unit price that is adjusted quarterly to reflect market conditions and inflation in the area being repaired.  The plaintiffs contend that IntegriClaim's prices are actually lower than those prices used in the construction industry or in other estimating programs such as Exactimate pricing software used by other insurance companies.

[2] Additionally, the plaintiffs charge that Allstate has willfully, arbitrarily and capriciously adjusted IntegriClaim's already reduced prices by *further* reducing the unit prices necessary to adjust the claims of their insureds.

the timing and adjustment of each class member's claim, the source data used to prepare damage estimates, the precise market conditions at the time each class member's damages were assessed,...."[3]  The plaintiffs assert that Allstate manipulated its claims adjusting software so as to produce artificially depressed claim values with the intent to underpay their insured's claims.

Allstate counters that plaintiffs' class allegations fail as a matter of law and must be stricken because individualized inquiries predominate.  Allstate also moves to dismiss under Fed. R. Civ. P. 12(b)(1) and/or 12(b)(6), claiming that the plaintiffs' breach of contract claims fail because they failed to identify any specific contract provision that Allstate violated, and that the plaintiffs' bad faith claims under La. Rev. Stat. § 22:658 must likewise fail.  Finally, Allstate maintains that the plaintiffs' fraud claims are preempted by the Louisiana breach of contract statutes, and, in the alternative, that the fraud claims fail for lack of sufficient pleading as required by Fed. R. Civ. P. 9(b).

I.

Rule 23(a) sets forth four prerequisites to any class action: (1) a class "so numerous that joinder of all members is impracticable"; (2) the existence of "questions of law or fact

---

[3] Allstate had filed a substantially similar motion to dismiss Henry I.  However, because the plaintiffs had voluntarily dismissed Henry I, they never filed a response to that motion.

4

common to the class"; (3) class representatives with claims or defenses "typical . . . of the class"; and (4) class representatives that "will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a). In addition to these prerequisites, a party seeking class certification under Rule 23(b)(3) must also demonstrate that "questions of law or fact common to the members of the class predominate over any questions affecting only individual members" and that the class action is "superior to other available methods for the fair and efficient adjudication of the controversy." Fed. R. Civ. P. 23(b)(3).

The plaintiffs bear the burden of showing that all of these Rule 23 criteria are met. Unger v. Amedisys Inc., 401 F.3d 316, 320 (5th Cir. 2005). A court may strike class allegations under Rule 23(d)(4) where a complaint fails to plead the minimum facts necessary to establish the existence of a class satisfying Rule 23's mandate. See Terrebonne v. Allstate Ins. Co., No. 06-4697 (E.D. La. July 31, 2007) (Vance, J.) (citing Fed.R.Civ.P. 23(d)(4) and Eisen v. Carlisle & Jacquelin, 417 U.S. 156, 184 n.6 (1974) ("Under Rule 23(d)(4), the District Court may in some instances require that pleadings be amended to eliminate class allegations."); see also Hedgepeth v. Blue Cross & Blue Shield of Miss., 2006 WL 141624 (N.D. Miss. Jan. 18, 2006)(citing Stewart v. Winter, 669 F.2d 328, 331 (5th Cir. 1982)) and noting that the Fifth Circuit has upheld the power of district courts to dismiss class

allegations prior to any extensive class-related discovery).

The plaintiffs appear to seek certification of their putative class under Rule 23(b)(3). Even assuming that the plaintiffs have met the four requirements of Rule 23(a), they have not met their burden under Rule 23(b)(3) of proving that common issues of the class predominate over individual issues, and the class certification fails for this reason. See Maldonado v. Ochsner Clinic Foundation, No. 06-30573, 2007 WL 2054906 (5th Cir. July 19, 2007).

Rule 23(a)(2) instructs that there be issues of law or fact common to the class. The commonality requirement is satisfied if at least one issue's resolution will affect all or a significant number of class members. See James v. City of Dallas, 254 F.3d 551, 570 (5th Cir. 2001); Mullen v. Treasure Chest Casino, LLC, 186 F.3d 620, 625 (5th Cir. 1999). A low threshold exists for commonality, and the fact that some plaintiffs have different claims or require individualized analysis does not defeat commonality. James, 254 F.3d at 570. But the analysis continues because Rule 23(b)(3) mandates that common questions of law or fact must also "predominate over any questions affecting only individual [class] members." Unger, 401 F.3d at 320. This is the test of cohesion, and it is demanding. To predominate, common issues must form a significant part of individual cases. Mullen, 186 F.3d at 626. The predominance requirement of Rule 23(b)(3) is "far more

6

demanding" than the commonality requirement of Rule 23(a), because it "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." Unger, 401 F.3d at 320. Lastly, the cause of action as a whole must satisfy Rule 23(b)(3)'s predominance requirement. Steering Committee v. Exxon Mobil Corp., 461 F.3d 598, 601-02 (5th Cir. 2006) ("where individual damages claims cannot be determined by reference to a mathematical or formulaic calculation, the damages issue may predominate over any common issues shared by the class").

The plaintiffs allege that Allstate improperly adjusted hurricane property damage claims by utilizing software that undervalued the actual market cost of construction materials.[4] This Court has struck similar class allegations against an insurer based on its alleged "corporate scheme and pattern and practice of bad faith and improper claims handling." See Aquilar v. Allstate Fire and Casualty Ins. Co., No. 06-4660, 2007 WL 734809 (E.D. La. March 6, 2007) and Spiers v. Liberty Mut. Fire Ins. Co., C.A. No. 06-4493 (E.D. La. Nov. 21, 2006). A Mississippi federal court likewise declined to certify a class of insured property owners

---

[4] The plaintiffs contend that the quarterly cost estimates used by IntegriClaim software valued each loss below the actual industry cost to complete the repairs, that the IntegriClaim quarterly cost estimates were lower than comparable values used by competitor's claim-adjusting software programs, and that Allstate further reduced the allegedly below-market values of the IntegriClaim cost estimates when they calculated damage settlements for each claim.

against their insurers, noting:

> Each property owner in Mississippi who had real and personal property damaged in Hurricane Katrina is uniquely situated. No two property owners will have experienced the same losses. The nature and extent of the property damage the owners sustain from the common cause, Hurricane Katrina, will vary greatly in particulars....

Comer v. Nationwide Mut. Ins. Co., 2006 WL 1066645, at *2 (S.D. Miss. Feb. 23, 2006).

Even more recently, Judge Vance of this Court struck similar class allegations, citing these rulings with approval, noting that "[o]ther district courts have likewise rejected Katrina-related class certifications under Rule 23(b)(3) because of the highly individualized and varied nature of the respective plaintiffs' claims." Terrebonne v. Allstate Insurance Company, No. 06-4697 (E.D. La. July 31, 2007). Similarly, Judge Trimble of the Western District of Louisiana recently struck class action allegations where the claims at issue involved the need to examine actual market prices for construction materials compared to the insurer's estimate of the cost of those materials. See John v. Nat'l Sec. Fire & Cas. Co., No. 06-1407, 2006 WL 3228409 (M.D. La. Nov. 3, 2006).[5]

---

[5] In granting the motion to dismiss class allegations, Judge Trimble noted:

> [A]s to Plaintiff's claims for damages for under adjustment of unit prices because of the supply and demand problem after

The striking similarity of the allegations here compels the same result.  Allstate's general internal policies for adjusting claims, including its use or manipulation of software, may arguably be one common issue of fact, but proving a questionable pattern and practice of undervaluing claims will require an intensive review of the individual facts of each class member's damage claim, including the nature and extent of damage, the timing and adjustment of each class member's claim, how much each class member was paid for his claim and for what damage, and whether that amount was sufficient and timely.  On the face of the pleading, it is clear that those individualized and highly personal issues pertaining to each class member patently overwhelm any arguably common issues, rendering the claims inappropriate for class treatment.  See Pollet v. Travelers Prop. Cas. Ins. Co., 2001 WL 1471724 (E.D. La. Nov. 16, 2001)(Clement, C.J.)(holding that class certification was inappropriate in an action alleging that the insurer failed to adequately compensate policyholders because of the need for individualized

---

> Hurricanes Katrina and Rita struck Louisiana, a factual inquiry would have to be made into each putative class member's claims, such as where and when materials and supplies were being purchased, what was the market price at that time, and when did the price of materials and supplies decrease.

Id. at *4.

9

proof on thousands of separate insurance claims).[6]

The Henrys concede that the only common questions that unite the putative class is that their property was damaged by Hurricanes Katrina and Rita and that Allstate used software as a claims-adjusting tool. They suggest that these common issues "simply predominate over and eliminate all individual issues except for

---

[6] Judge Clement's reasoning in Pollet is compelling:

> In the instant case, the need for individualized proof on thousands of separate claims strongly counsels against maintaining a class action. First, every claimant has a different roof, with different hail damage, in a different location. In addition, each of the thousands of allegations that [defendants] acted in bad faith by intentionally failing to pay legitimate claims will require an individual investigation into the damages, the type of insurance policy, and the defendants' actions. Accordingly, the Court finds that maintaining the instant suit as a class action would result in several thousand mini-trials on individual issues, rather than a single comprehensive resolution of issues relevant to the class as a whole. Similarly, the plaintiff's remaining allegations of misrepresentation and deceptive business practices also require fact- specific evidence of the individual policies issued and the promises made to each class member. As a result, a class action trial of these claims would involve multiple detailed analyses of individual issues rather than the efficient resolution of questions pertinent to the class as a whole. For these reasons, the Court does not find that common issues of law or fact predominate over individual questions.

Id. at *2.

quantum." This is a gross oversimplification and perverts Rule 23. Their failure to show that these common questions predominate over questions affecting individual class members (such as the nature and extent of the homeowner's damage, the timing and adjustment of the homeowner's claim, the source of data used to prepare the damage estimate, the market conditions in place at the time the damage was assessed, whether Allstate further discounted the amount of the claim, and the amount the homeowner was paid for his claim) confirms that they cannot carry their heavy burden to show that class action treatment is appropriate.

## II.

Rule 12(b)(6) of the Federal Rules of Civil Procedure allows a party to move for dismissal of a complaint for failure to state a claim upon which relief can be granted.  Such a motion is rarely granted because it is viewed with disfavor.  See Kaiser Aluminum & Chem. Sales, Inc. v. Avondale Shipyards, Inc., 677 F.2d 1045, 1050 (5th Cir. 1982).  The complaint must be liberally construed in the plaintiff's favor and all facts pleaded in the complaint must be taken as true.  See Campbell v. Wells Fargo Bank, 781 F.2d 440, 442 (5th Cir. 1986).  This Court cannot dismiss a complaint under Rule 12(b)(6) unless it appears beyond doubt that the plaintiff cannot prove a plausible set of facts in support of his claim which would entitle him to relief.  Bell Atlantic Corp. v. Twombly, No. 05-1126, slip op. at 7-12 (U.S. May 21, 2007).

The Henrys assert claims against Allstate for underpayment of their insurance claim and breach of its good faith duty, and for fraud; they seek damages for violation of state law penalty statutes under La. Rev. Stat. § 22:1220 and La. Rev. Stat. § 22:658.

A.

The Fifth Circuit requires that, "[t]o state a claim for breach of an insurance contract under Louisiana law, a plaintiff must allege a breach of a specific policy provision." Louque v. Allstate Insurance Company, 314 F.3d 776, 782 (5th Cir. 2002)(citing Bergeron v. Pan Am. Assurance Co., 731 So.2d 1037, 1045 (La. App. 1999). The plaintiffs point to no specific policy provisions in their complaint that would prohibit anything Allstate did in the settlement of their claims. Confusingly, the plaintiffs say that their claim against Allstate is for underpayment of their insurance claim, but they also appear to concede in their opposition papers that they are not urging that Allstate breached its insurance contract. At the same time, the plaintiffs argue that Allstate incorrectly interprets Bergeron; but if that is so, then the Fifth Circuit is also misguided in its interpretation of Bergeron. The Court, however, agrees with Bergeron and the Fifth Circuit. While the plaintiffs' complaint is vaguely and inartfully crafted, this Court must resolve all doubts regarding the sufficiency of their claims in the plaintiffs' favor. Considering the Lowrey standard

for dismissing a plaintiff's claim, the Court declines to dismiss their individual breach of contract claim, but instead will allow the plaintiffs the opportunity to amend their complaint to correct the Bergeron deficiencies, if they can.

B.

Louisiana Revised Statutes 22:658 and 22:1220 announce statutory penalties that may be imposed on insurance companies for improper handling of first-party property insurance claims. Section B of La. R.S. 22:1220 outlines five causes of action against an insurer: misrepresenting insurance policy provisions relating to coverage, failing to pay a settlement timely after an agreement is reduced to writing, denying coverage or attempting to settle a claim on an altered application without the insured's consent, misleading a claimant as to the prescriptive period, and arbitrarily failing to settle claims timely after receiving satisfactory proof of loss.

Louisiana courts have held that "because R.S. 22:1220 is penal in nature, strict construction of the statute is required and that the five instances specified in section B are exclusive." Armstrong v. Rabito, 669 So.2d 512, 514 (La. App. 1995)(citing Hernandez v. Continental Casualty Co., 615 So.2d 484 (La. App. 1993)); see also Hart v. Allstate Ins. Co., 437 So.2d 823 (La. 1983). Louisiana courts have also held that unless one of the prohibited acts specified in 22:1220 is asserted by the plaintiff,

13

then the claims must be dismissed. Armstrong, 669 So.2d at 514; Boatner v. State Farm Mutual, No. 92-C-1248 (La. App. Sept. 28, 1992).

The plaintiffs rather vacuously characterize their complaint as "nothing more than your typical action for statutory damages." They contend that they are entitled to recover penalties because Allstate failed to pay the full amount of their claim even though they provided Allstate with a proof of loss. Their inartful assertions appear to be an attempt to implicate La. R.S. 22:1220(B)(5). Because the Court will allow the plaintiffs to try to cure their obvious breach of contract pleading deficiencies, the plaintiffs will also have a chance to cure their bad faith claims deficiencies as well.

C.

Allstate also moves to dismiss the plaintiffs' fraud claim. The plaintiffs' amended petition charges that "Allstate's use of IntegriClaim [was] so deceptive and misleading as to constitute fraud sufficient to vitiate the necessary consent of their insureds with regard to the settlement of their claims as set forth in La.C.C. article 1953."

The plaintiffs only reference "fraud" in Count II, which concerns their class allegations and the Court has determined that

14

the plaintiffs' class allegations should be stricken.[7] Even if the plaintiff is somehow attempting to state an individual claim for fraud, the claim would be dismissed for failure to satisfy the particularity requirements of Federal Rule of Civil Procedure 9(b). The plaintiffs' fraud allegations are vague and fail to "plead enough facts to illustrate the 'who, what, when, where, and how' of the alleged fraud." See Carroll v. Fort James Corp., 470 F.3d 1171, 1174 (5th Cir. 2006) (citations omitted).

III.

Finally, Allstate contends that the Henrys should reimburse Allstate for the costs and attorney's fees incurred in defending Henry I, which the Henrys voluntarily dismissed.

Federal Rule of Civil Procedure 41(d) provides:

> If a plaintiff who has once dismissed an action in any court commences an action based upon or including the same claim against the same defendant, the court may make such order for the payment of costs of the action previously dismissed as it may deem proper and may stay the proceedings in the action until the plaintiff has complied with the order.

The plaintiffs voluntarily dismissed Henry I and commenced this suit, which nevertheless contains the same claims against Allstate. The plaintiffs' voluntary dismissal contains no

---

[7] The plaintiffs' attempt to certify a fraud class action fails for the well-established reason that "[a] fraud class action cannot be certified where individual reliance will be an issue." Castano v. American Tobacco Co., 84 F.3d 734, 745 (5th Cir. 1996) (citation omitted).

statement that the Henrys intended to refile their lawsuit, in obvious and somewhat crude disregard of Local Rule 41.1E.  An award of costs, including attorney's fees, is warranted.[8]  As the plaintiffs suggest, any costs assessed will be <u>minimal</u>, considering Allstate seems to agree that the pending motion is nearly identical to the one filed in <u>Henry I</u>.  Any costs or fees incurred in defending <u>Henry I</u> that were equally valuable in defending this action must not be included in the award.  Once Allstate files a motion to determine fees and costs, the magistrate judge will, by appropriate reference, determine the quantum owed.  As to Allstate's request that the action be stayed, the Court declines to grant the request.  A stay would not serve the interests of justice or judicial economy and would only delay resolution of this lawsuit.

Accordingly, the defendant's motion to strike class allegations is GRANTED.  The defendant's motion to dismiss is GRANTED in part and DENIED in part:  The plaintiffs' fraud claim is dismissed.  The plaintiffs are granted leave to amend their claim for breach of contract and violation of penalty statutes within fourteen days.  The defendant's motion for costs and a stay is GRANTED in part and DENIED in part:  An award of costs is appropriate, the amount to be determined by the magistrate judge.

---

[8] Plaintiffs' counsel might also wish to pay close attention to the mandate of 28 U.S.C. § 1927 in the future.

However, Allstate's request for a stay is DENIED.

New Orleans, Louisiana, August 8, 2007.

_____
MARTIN L. C. FELDMAN
UNITED STATES DISTRICT JUDGE